IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Raymond W. Carter, #284096 ) | |
| ) | Civil Action Number: 6:07-3481-GRA-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Warden White, Nurse NFN Brown, ) | |
| Dr. Alewine; Medical Department ) | |
| at BRCI, in their individual and ) | |
| official capacities. ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the defendants' motion for summary judgment (doc. 27). The plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and local rule 73.02(B)(2)(d), D.S.C., all pretrial matters in cases filed under Title 42, United States Code, Section 1983, are referred to a United States Magistrate Judge for consideration.

On March 3, 2008, the defendants filed a motion for summary judgment. By order filed on March 4, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On April 3, 2008, the plaintiff filed his opposition to the motion.

**FACTS PRESENTED**

On December 28, 2004, while he was incarcerated with the South Carolina Department of Corrections ("SCDC") at Broad River Correctional Institute ("BRCI"), the plaintiff

slipped and fell while attempting to climb down from his bunk bed (comp. 3). He alleges the injuries he sustained to his back, neck, shoulder and head have kept him in near constant pain since the accident. He can no longer perform many of the activities he used to enjoy. The following day, December 29, 2004, the plaintiff went to the medical office at BRCI complaining of neck and back pain. The nurse gave him medication for pain and muscle spasms and a neck collar (Alewine aff. 3). He was given a no work pass at that time (pl. medical records 24). The plaintiff was seen again on December 31, 2004. On January 6, 2005, the plaintiff continued to complain of neck and shoulder pain. X-rays were ordered, and th plaintiff was given a bottom bunk pass for 30 days, and a no work pass for two weeks. The x-rays were within normal limits (pl. medical records 22-23). Because the plaintiff continued to complain of pain that was unrelieved by pain medication and muscle relaxers, on February 16, 2005, the nurse practitioner ordered an orthopedic consult (pl. medical records 21-22).

The orthopedic surgeon examined the plaintiff on April 18, 2005, and recommended an MRI of the cervical spine. The MRI was performed on May 18, 2005, and revealed a congenital fusion of C2-C3 and desiccated discs or early degenerative discs seen at multiple levels in the upper cervical spine with no significant disc bulges or herniations noted. However, there was a congenital stenosis from the level of C3 down to C6, and there was some narrowing of the left neural foramen at C6-C7 and C7-T1 secondary to uncovertebral joint and facet joint arthrosis (pl. medical records).

On September 19, 2005, a neurosurgeon examined the plaintiff, recommended and ordered a cervical CT myelogram, and issued a walking cane (pl. medical records 16). After reviewing the MRI and the myelogram, the neurosurgeon reported on November 28, 2005 that he did not think the degree of stenosis was bad enough for surgery. Instead, he recommended the plaintiff be followed clinically and radiologically and that surgery be offered only if the symptoms worsened or subsequent MRIs showed any changes. Follow-up MRIs on June 23, 2006, and September 25, 2006 showed the plaintiff's cervical spine to be in stable condition. The neurosurgeon examined the plaintiff on October 16, 2006, and recommended

follow-up in one year (pl. medical records). The plaintiff admits to receiving the above medical treatment. However, he contests the adequacy of the medical attention, especially with regard to delays between steps in his treatment process  (pl. resp. m.s.j. 5).

The plaintiff was released from SCDC and now is in the custody of the Lexington County Detention Center. He claims that because SCDC did not forward his medical records, Lexington County is unaware of his disabilities, stopped his medications, questions him constantly about the cane he uses, and makes him pay for an extra mattress and blanket. The plaintiff asks the court to order SCDC to pay Lexington County to transport him to an appointment with a neurologist and to pay for another MRI and to reimburse him for all past and future co-payments and out of pocket payments for medications and other medical expenses. The plaintiff seeks actual damages for past, present, and future pain and suffering, lost income resulting from his permanent disability, and punitive damages.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* At 257. In determining whether a genuine issue

3

has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather he must demonstrate that specific, material facts exist which give rise to the a genuine issue. *Id*. at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputres that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Accordingly, when rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

### *Deliberate Indifference*

The plaintiff alleges that he was denied proper medical care and treatment for his back, neck, shoulder, and head problems. The defendants counter that the plaintiff has not offered any competent medical evidence outside of his own allegations, and his medical opinion is insufficient (def. m.s.j. 8). This court agrees.

Deliberate indifference by prison personnel to an inmate's serious illness or injury is actionable under 42 U.S.C. § 1983 as constituting cruel and unusual punishment contravening the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). The

4

government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Id.* at 102. This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. To establish that a healthcare provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Rogers v. Evans*, 792 F.2d 1052, 1058 (5th Cir. 1986). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

In order to establish that he has been subjected to cruel and unusual punishment, the plaintiff must prove that the deprivation of a basic human need was, objectively, sufficiently serious and that, subjectively, the officials acted with a sufficiently culpable state of mind. *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir.1993)(quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). What suffices as a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Courts have traditionally attempted to avoid intervening and dictating the medical care of prisoners. As noted by the Fourth Circuit, courts should "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. . . .[which] remains a question of sound professional judgment." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

With respect to the subjective component of deliberate indifference, while an "express intent to inflict unnecessary pain is not required . . . [i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the cruel and unusual punishment clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Mere

5

disagreement between an inmate and a physician over the appropriate form of treatment is not an actionable constitutional claim. *Wright v. Collins*, 766 F2d 841, 849 (4th Cir. 1975).

Assuming that plaintiff had a sufficiently serious condition, he has not shown the subjective component of deliberate indifference. The plaintiff's medical records indicate that he has been seen on numerous occasions by the medical staff of BRCI. The records also show that his medical complaints have been documented and addressed in a sound manner. The plaintiff was referred to and treated by two outside specialists. The neurosurgeon concluded that the plaintiff had a congenital problem with his spine that should be treated conservatively with medication and monitored. Subsequent tests have shown that the plaintiff's spine remains stable. The plaintiff has failed to show any evidence that any defendant disregarded any serious medical condition or need, or that any defendant failed to timely and appropriately observe, assess, or treat his complaints (pl. medical records). At most, the plaintiff had a disagreement with medical staff as to the proper treatment of the conditions alleged in the complaint. However, negligence or malpractice in medical services does not create a constitutional cause of action. *See Wright*, 766 F.2d at 849. As argued by the defendants, to the extent the plaintiff makes allegations regarding his medical treatment now that he is held in the Lexington County Detention Center, Lexington County, and not the defendants in this case, now makes the decisions about the medical care he receives. Based upon the foregoing, the plaintiff's Eighth Amendment claim fails.

### *Respondeat Superior*

The plaintiff has failed to allege that defendant Warden White personally acted or failed to act in violation of his constitutional rights. The doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977). The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was

6

engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994). The plaintiff has failed to show that the subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury. Further, there is no evidence that Warden White was indifferent to or authorized any such conduct. Accordingly, the plaintiff has failed to state a claim against Warden White for violation of his Eighth Amendment rights under a respondeat superior or vicarious liability theory.

***Qualified Immunity***

The defendants argue that they are entitled to qualified immunity as their conduct did not violate any clearly-established constitutional or statutory rights of which a reasonable person should have known. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified

7

immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). The plaintiff has failed to demonstrate that the defendants violated any of his constitutional rights. Therefore, the defendants are entitled to qualified immunity.

### *State Claims*

To the extent the plaintiff's complaint is construed to allege state law claims against the defendants, the court should decline to exercise supplemental jurisdiction over any such claims as it is recommended that summary judgment be granted on the federal claims. *See* 28 U.S.C. § 1367(c).

### **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment (doc. 27) be granted.

                                                                                  _____
                                                                                  WILLIAM M. CATOE
                                                                                  UNITED STATES MAGISTRATE JUDGE

September 18, 2008

Greenville, South Carolina

8